1

2

3

4

5

6

7

8

9 **IN THE UNITED STATES DISTRICT COURT**

10 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12 MARCO ANTHONY TALAMANTES,          No. CIV S-09-3547-LKK-CMK-P

13                Petitioner,

14        vs.                         FINDINGS AND RECOMMENDATIONS

15 RANDY GROUNDS,

16                Respondent.

17 _____/

18         Petitioner, a state prisoner proceeding with retained counsel, brings this petition

19 for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are

20 petitioner's petition for a writ of habeas corpus (Docs. 1 & 2) and respondent's answer (Doc. 11).

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

1

# I.  BACKGROUND

## A.    Facts[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> In July 2006, Alida Torres, Augustine Torres, Adriana Virrueta, and Taurino Ochoa went to a Motel 6 to rent room.  (footnote omitted). Alida and Augustine were driving a Camry and Virrueta and Ochoa were driving a Lincoln.  Alida and Virrueta waited outside with the cars while Augustine and Ochoa entered the motel office.
>
> Virrueta left the Lincoln to start removing some of her clothing from inside the Camry.  At that point, defendants drove up in a multicolored car and parked beside the Camry.  Defendant Ambriz exited the multicolored car and approached Alida, who was also taking her clothing out of the Camry.  He asked if she had a boyfriend.  Fearing her husband Augustine would start a fight with defendant Ambriz, Alida told him that her father was inside the motel office and asked him to leave.
>
> Defendant Ambriz returned to the multicolored car and moved it forward a short distance.  Defendant Talamantes then exited the multicolored car and approached the Lincoln.  He announced the keys to the Lincoln were still in the ignition.  He then entered the Lincoln and drove it out of the motel parking lot.
>
> Alida and Virrueta ran into the motel office.  They told Augustine and Ochoa that the Lincoln had been taken.  Defendant Ambriz was still in the multicolored car in the parking lot.  Ochoa confronted him, but he was able to drive out of the parking lot.
>
> Ochoa and Virrueta borrowed the Camry to pursue defendants. They called the police while they were driving.  They eventually found the Lincoln on a residential street, parked, with no one inside.  Ochoa exited the Camry and entered the Lincoln.  Defendants then appeared and attacked Ochoa.  Defendant Ambriz began hitting Ochoa.  Ochoa got out of the car.  Defendant Talamantes tripped Ochoa.  Defendant Ambriz then kicked Ochoa in the face.  Defendants then took the Lincoln and drove away.
>
> Ochoa and Virrueta followed the Lincoln in the Camry again.  The Lincoln stopped on a different street.  Defendants exited the Lincoln and started walking toward the Camry, so Ochoa and Virrueta left the area. Soon afterwards, Ochoa and Virrueta were contacted by the police.  The police had found the Lincoln and took Ochoa and Virrueta to the Lincoln's new location.  The car was wrecked.

---

[1]    Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

1
2
3
Officer Darren Sandoval saw defendants walking in the area where the Lincoln was recovered.  As he approached, defendants jumped over a small fence and hid.  Officer Sandoval captured and arrested defendants. Ochoa and Virrueta later identified them as the men who had taken the car.

4   **B.      Procedural History**

5       Petitioner and co-defendant Tonino Ambriz were each convicted on two counts of

6   car theft and one count of carjacking.[2]  Petitioner was sentenced to a determinate prison term of

7   17 years 4 months.  Petitioner's conviction and sentence were affirmed on direct appeal in a

8   reasoned decision issued by the California Court of Appeal.  The California Supreme Court

9   denied review without comment or citation.

10

11   **II.  STANDARDS OF REVIEW**

12       Because this action was filed after April 26, 1996, the provisions of the

13   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively

14   applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct.

15   (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA

16   does not, however, apply in all circumstances.  When it is clear that a state court has not reached

17   the merits of a petitioner's claim, because it was not raised in state court or because the court

18   denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal

19   habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir.

20   2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach

21   petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208

22   (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on

23   perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the

24   evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing

25

26   [2]      On direct appeal, one of the car theft convictions was reversed as to Ambriz.

1  petition de novo where state court had issued a ruling on the merits of a related claim, but not the

2  claim alleged by petitioner).  When the state court does not reach the merits of a claim,

3  "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

4           Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is

5  not available for any claim decided on the merits in state court proceedings unless the state

6  court's adjudication of the claim:

7           (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as determined
8           by the Supreme Court of the United States; or

9           (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the State
10          court proceeding.

11  Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is

12  "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

13  standards, "clearly established law" means those holdings of the United States Supreme Court as

14  of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

15  (citing Williams, 529 U.S. at 412) .  "What matters are the holdings of the Supreme Court, not

16  the holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en

17  banc).  Supreme Court precedent is not clearly established law, and therefore federal habeas

18  relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742,

19  753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).

20  For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

21  to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a

22  state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

23  contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

24  created by state conduct at trial because the Court had never applied the test to spectators'

25  conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

26  holdings.  See Carey, 549 U.S. at 74.

1     In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

2 majority of the Court), the United States Supreme Court explained these different standards. A

3 state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

4 the Supreme Court on the same question of law, or if the state court decides the case differently

5 than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state

6 court decision is also "contrary to" established law if it applies a rule which contradicts the

7 governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate

8 that Supreme Court precedent requires a contrary outcome because the state court applied the

9 wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme

10 Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See

11 id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to

12 determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040,

13 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which

14 case federal habeas relief is warranted. See id. If the error was not structural, the final question

15 is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

16     State court decisions are reviewed under the far more deferential "unreasonable

17 application of" standard where it identifies the correct legal rule from Supreme Court cases, but

18 unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S.

19 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested

20 that federal habeas relief may be available under this standard where the state court either

21 unreasonably extends a legal principle to a new context where it should not apply, or

22 unreasonably refuses to extend that principle to a new context where it should apply. See

23 Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court

24 decision is not an "unreasonable application of" controlling law simply because it is an erroneous

25 or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,

26 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found

1   even where the federal habeas court concludes that the state court decision is clearly erroneous.

2   See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

3   deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75.

4   As with state court decisions which are "contrary to" established federal law, where a state court

5   decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

6   unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

7

8                                    **III.  DISCUSSION**

9           Petitioner argues that the trial court erred by not allowing him to challenge the

10  credibility of victims by cross-examining them regarding their immigration status.  A writ of

11  habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal

12  law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985);

13  Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in

14  the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see also Lincoln v.

15  Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir.

16  1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright,

17  407 U.S. 371, 377 (1972).

18          However, a "claim of error based upon a right not specifically guaranteed by the

19  Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

20  infects the entire trial that the resulting conviction violates the defendant's right to due process."

21  Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

22  Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  Because federal habeas

23  relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal

24  habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due

25  process.  See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d

26  971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see

1   also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994).   To raise such a claim in a

2   federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of

3   justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95

4   (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).   In any event, an

5   evidentiary error is considered harmless if it did not have a substantial and injurious effect in

6   determining the jury's verdict.  See Padilla v. Terhune, 309 F.3d 614, 621 (9th Cir. 2002); see

7   also Laboa v. Calderon, 224 F.3d 972, 976 (9th Cir. 2001).

8              Regarding this claim, the state court outlined the following background:

9              Before trial, the prosecutor filed a motion in limine to exclude any
            questioning regarding the victims' immigration status.  At a hearing on the
10          motion, the trial court established that neither side knew whether the
            victims were illegal immigrants.  The prosecutor argued the potential
11          testimony was barred because it was irrelevant, illegal immigration was
            not a crime of moral turpitude, it was irrelevant to show credibility, it
12          would be unduly prejudicial, and there was no probative value to the
            inquiry.  Defendants contended illegal immigration is a crime of moral
13          turpitude, "depending on how the entry was made, whether it was by use
            of false documents."
14              The trial court stated, "I couldn't find anything labeling illegal
            immigration as a crime of moral turpitude, but we do have a definition, it's
15          readiness to do evil and/or would this give rise to reason for disbelieving
            someone.  First of all, [defendants] don't have a rational basis to ask the
16          question and trial is not the time to do discovery so I'm not going to allow
            you to ask the questions of Alida . . . . [Y]ou don't have a rational basis.
17          I'm still going to exercise my discretion and I'm going to do an [Evidence
            Code section] 352 analysis into this.  With regard to immigration status,
18          that's not something the Court ever asks.  Whenever I advise the defendant
            of their plea, I never ask them what their immigration status is.  I do give
19          them the admonition, 'If you're an illegal immigrant, any conviction can
            result in your deportation,' but the Court never asks that and that's because
20          justice is blind.  Just because they're here illegally doesn't mean they can't
            be a victim of a crime and they shouldn't be allowed the laws of
21          protection.  It's not just a crime when you're illegally here.  It's a crime
            period.  People who are here illegally would be more likely than not to
22          report being the victim of a crime because then now they're involved in
            law enforcement and then the immigration status becomes a concern.
23          Also, here in our country, what's going on right now in our world, there's
            a big hot issue about immigration right now and that would be another
24          reason that it would be unduly prejudicial to ask that question.  The current
            environment against illegal aliens is not favorable.  There are lots of
25          reasons that people are here in this country, and as I mentioned before,
            they're more likely than not to report.   I find that it has very little, if no
26          probative value, and the prejudice outweighs it.  So the Court is not going

1    to allow you to ask that question."

2                            * * *

3        Neither party has provided this court with any published case law
     determining whether illegal immigration is a crime of moral turpitude.
4    Our own research has not found any case law on this question either.  Even
     assuming, however, that illegal immigration is a crime of moral turpitude,
5    we conclude the trial court did not err in precluding defendants from
     questioning the victims on their immigration status.

6

7    The state court then went on to conclude that the trial court's analysis under California Evidence

8    Code § 352 was correct.

9        Respondents argue first that the claim is unexhausted because petitioner did not

10   present the federal component of the claim to the state courts.[3]  Under 28 U.S.C. § 2254(b), the

11   exhaustion of available state remedies is required before claims can be presented to the federal

12   court in a habeas corpus case.  See Rose v. Lundy, 455 U.S. 509 (1982); see also Kelly v. Small,

13   315 F.3d 1063, 1066 (9th Cir. 2003); Hunt v. Pliler, 336 F.3d 839 (9th Cir. 2003).   "A petitioner

14   may satisfy the exhaustion requirement in two ways:  (1) by providing the highest state court with

15   an opportunity to rule on the merits of the claim . . .; or (2) by showing that at the time the

16   petitioner filed the habeas petition in federal court no state remedies are available to the

17   petitioner and the petitioner has not deliberately by-passed the state remedies."  Batchelor v.

18   Cupp , 693 F.2d 859, 862 (9th Cir. 1982) (citations omitted).  The exhaustion doctrine is based

19   on a policy of federal and state comity, designed to give state courts the initial opportunity to

20   correct alleged constitutional deprivations.  See Picard v. Connor, 404 U.S. 270, 275 (1971); see

21   also Rose, 455 U.S. at 518.

22       Regardless of whether the claim was raised on direct appeal or in a post-

23   conviction proceeding, the exhaustion doctrine requires that each claim be fairly presented to the

24       [3]    Respondents incorrectly argue at some points in their brief that the failure to
     present the federal claim to the state courts presents a procedural bar scenario.  It does not.
25   Procedural bars only arise when the state court imposed a state procedural default, which did not
     happen in this case.  The California court addressed petitioner's claim on the merits and never
26   concluded that the claim was default in some way.

1   state's highest court.  See Castille v. Peoples, 489 U.S. 346 (1989).  Although the exhaustion

2   doctrine requires only the presentation of each federal claim to the highest state court, the claims

3   must be presented in a posture that is acceptable under state procedural rules.  See Sweet v.

4   Cupp, 640 F.2d 233 (9th Cir. 1981).  Thus, an appeal or petition for post-conviction relief that is

5   denied by the state courts on procedural grounds, where other state remedies are still available,

6   does not exhaust the petitioner's state remedies.  See Pitchess v. Davis, 421 U.S. 482, 488

7   (1979); Sweet, 640 F.2d at 237-89.[4]

8          In addition to presenting the claim to the state court in a procedurally acceptable

9   manner, exhaustion requires that the petitioner make the federal basis of the claim explicit to the

10  state court by including reference to a specific federal constitutional guarantee.  See Gray v.

11  Netherland, 518 U.S. 152, 162-63 (1996); see also Shumway v. Payne, 223 F.3d 982, 998 (9th

12  Cir. 2000).  It is not sufficient for the petitioner to argue that the federal nature of the claim is

13  self-evident.  See Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000), amended by 247 F.3d

14  904 (9th Cir. 2001).  Nor is exhaustion satisfied if the state court can only discover the issue by

15  reading a lower court opinion in the case.  See Baldwin v. Reese, 541 U.S. 27, 32 (2004).

16         A review of petitioner's opening brief on direct appeal reveals that he argued that

17  the trial court's refusal to allow cross-examination of the victims on their immigration status was

18  "reversible error."  As part of his argument, petitioner asserted that the alleged error was not

19  harmless.  He stated: "[The harmless error] standard applies because the error violated

20  appellant's basic constitutional trial rights – the right to due process of law, the right to confront

21  and cross examine, and the right to a jury trial, itself."  In support of this argument, petitioner

22  cited to several United States Supreme Court cases.  Petitioner similarly argued against harmless

23  error in his petition for review to the California Supreme Court.  Because the state courts

24

25         [4]   This situation of procedural deficiency is distinguishable from a case presented to
    the state court using proper procedures but where relief on the merits is precluded for some
26  procedural reason, such as untimeliness or failure to raise the claim on direct appeal.  The former
    represents an exhaustion problem; the latter represents a procedural default problem.

1   resolved the issue on state law grounds (i.e., whether the trial judge had erred in his section 352

2   analysis), the question of harmless error was never addressed.  On this record, the court finds that

3   petitioner sufficiently raised the constitutional dimension of his claim to the state courts.  The

4   claim is, therefore, exhausted.

5           Turning to the merits, as discussed above federal habeas relief is only available on

6   an alleged error of state law if the error rendered the trial fundamentally unfair.  Petitioner argues

7   that basic fairness dictates that he should have been allowed to conduct reasonable cross-

8   examination.  See Olden v. Kentucky, 488 U.S. 227, 231 (1988).  He also contends that the

9   impartiality and credibility of witnesses is always relevant and, therefore, is a reasonable line of

10  inquiry.  See Davis v. Alaska, 415 U.S. 308, 316 (1974).

11          Accepting petitioner's position that he had a due process right to reasonable cross-

12  examination and that impartiality and credibility are always reasonable subjects to ask about, the

13  court does not agree that the analysis ends there.  As petitioner states, he is constitutionally

14  guaranteed the ability to conduct a reasonable cross-examination.  Whether the cross-

15  examination he sought in this case was reasonable was a question of state law the trial court

16  decided under California Evidence Code § 352.  And, the question of whether the trial judge

17  correctly applied § 352 is a matter of state law this court cannot upset.  Here, the state court

18  concluded on direct appeal that the trial court was correct in concluding that the prejudicial effect

19  of the proposed cross-examination testimony was outweighed by its limited and uncertain

20  probative value.

21          Finally, even assuming error of constitutional magnitude, the court finds that

22  petitioner has not demonstrated that the error produced a substantial and injurious effect on the

23  verdict.  In other words, any error was harmless.  First, petitioner only speculates that the victims

24  in this case may have been illegal immigrants.  Second, if they were, petitioner only speculates as

25  to their method of entry (i.e., by forged or false documents).  Finally, there is no showing that,

26  even had the jury heard testimony to the effect that the victims were in the country illegally, this

1  fact would have made any difference to the jury.  Given the jury's verdicts, it is clear that the jury

2  believed the victims and disbelieved the defendants.  Petitioner can only speculate what the jury

3  would have found had they been presented with evidence that the victims were illegal aliens.  Or,

4  looking at it another way, petitioner has not demonstrated that the jury would have believed his

5  story more had they known of the victims' immigration status.

6         For these reasons, the court simply cannot say that the state court's denial of

7  petitioner's claim was either contrary to or an unreasonable application of any clearly established

8  federal law.

9

10                        **IV.  CONCLUSION**

11         Based on the foregoing, the undersigned recommends that petitioner's petition for

12  a writ of habeas corpus (Docs. 1 & 2) be denied.

13         These findings and recommendations are submitted to the United States District

14  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

15  after being served with these findings and recommendations, any party may file written

16  objections with the court.  Responses to objections shall be filed within 14 days after service of

17  objections.  Failure to file objections within the specified time may waive the right to appeal.

18  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19

20   DATED:  December 21, 2010

21

22                        **CRAIG M. KELLISON**
                          UNITED STATES MAGISTRATE JUDGE

23

24

25

26